## THE STATE v. CRESTON SUBLETT, Appellant.

Division Two, November 21, 1905.

1. **CONTINUANCE: Absent Witness.** Where an application for a continuance is based on the absence of a witness for the defendant, and it appears that, though the case had been pending for nearly two years, defendant did not have a subpoena issued for such witness until five days before the day of the trial, and no reason is given in the application why the subpoena was not issued earlier: and it further appears that the evidence of such absent witness, taken at a former trial, was read to the jury,

and that this evidence covered the same facts which the appli-
cation says the witness would testify to, if present, it cannot be
said that the trial court abused its discretion in overruling the
application.

2.  **EVIDENCE: Hearsay.** Defendant's mother, testifying as a wit-
ness in his behalf, after having stated that she told defend-
ant to leave the country, and that he would not have gone had
it not been for her, was asked by defendant's counsel to state
why she told him to leave. *Held,* that an objection to this ques-
tion was properly sustained, for the reason that what defendant's
mother may have said to induce him to leave was no justification
for his doing so, was mere hearsay, and inadmissible for any
purpose.

3.  **SEDUCTION: Promise of Marriage: Corroboration: Instruction.**
An instruction for the State, in a prosecution for seduction un-
der promise of marriage, which told the jury that before they
could find defendant guilty they must believe that the promise
of marriage, testified to by the prosecutrix, "has been corrobor-
ated by evidence in the cause other than her own testimony,
or by the admissions of defendant, or by facts and circumstan-
ces such as usually attend an engagement of marriage," *held,*
not erroneous.

4.  ———: ———: ———: ———: **Comment on Evidence.** An in-
struction, set out in the opinion, as to corroboration of the prom-
ise of a marriage in a prosecution for seduction, *held,* errone-
ous, as being a comment upon the evidence, the weight of which
was for the consideration of the jury.

5.  ———: ———: ———: **Failure to Define.** Where defendant in
a prosecution for seduction under promise of marriage asks no
instruction defining the word "corroborated," and does not call
the attention of the court to its failure to instruct upon the
whole case, the failure to define the word is not error.

6.  **FLIGHT: Circumstances: Instruction.** An instruction for the
State authorizing the jury to take into consideration defendant's
flight, in determining his guilt, should not also authorize them
to consider the facts and circumstances attending his flight, if
they were not brought out by the evidence. And even if they
were, defendant himself should have asked an instruction upon
that branch of the question if he desired it to be submitted.

7.  **STATEMENTS OF ATTORNEYS: Non-Prejudicial.** Statements
of attorneys in addressing the jury, though beyond the bounds
of legitimate argument, will not constitute reversible error if
they could not have prejudiced the minds of the jury against
the defendant.

8. **NEW TRIAL: Affidavits: Newly-Discovered Evidence: Hearsay.**
Although the trial court may, in its discretion, consider a motion
for a new trial on the ground of newly-discovered evidence not-
withstanding the affidavits to the motion are filed out of time,
yet when the matter set forth in the affidavits is merely hearsay
and could only be admitted to impeach the prosecuting witness,
for whose impeachment no foundation had been laid, the mo-
tion is properly overruled.

9. **SEDUCTION: Sufficiency of Evidence.**   The evidence in this
case, which was a prosecution for seduction under promise of
marriage, *held* sufficient to justify a conviction.

10. **LEWIS CIRCUIT COURT: Jurisdiction.**   On the authority of,
State v. Hall, 189 Mo. 262, it is held that the circuit court of
Lewis county had jurisdiction of this prosecution.

Appeal from Lewis Circuit Court.—*Hon. E. R. McKee,*
Judge.

AFFIRMED.

*Clay & Johnson, Jerry M. Jeffries* and *W. A. Mus-
setter* for appellant.

(1) The court erred in overruling defendant's ap-
plication for a continuance based upon the absence of
Foreman, a material witness, for whom a subpoena was
duly issued but returned not found.   State v. Maddox,
117 Mo. 684; State v. DeWitt, 152 Mo. 86; State v. An-
derson, 96 Mo. 250; State v. Hesterly, 182 Mo. 29; R.
S. 1899, sec. 2600.   (2) The court erred in excluding
the testimony of defendant's mother, showing the cause
of defendant's flight.   State v. King, 78 Mo. 557; State
v. Walker, 98 Mo. 108; State v. Mellon, 75 Mo. 357;
State v. Phillips, 24 Mo. 484; State v. Barham, 82 Mo.
72; State v. MaFoo, 110 Mo. 14; State v. Potter, 108
Mo. 429.   (3) The court erred in giving instruction 1
for the State, because it misdirects the jury as to the
rule of law regarding the evidence in corroboration of
the testimony of the prosecutrix as to the promise of
marriage. R. S. 1899, sec. 2631; State v. Reeves, 97 Mo.
673; State v. Hill, 91 Mo. 426; State v. Wheeler, 108

Mo. 665. (4) Instruction 1 for the State is erroneous in that it fails to define what "corroborating" means. State v. Reeves, 97 Mo. 674. (5) Said instruction is erroneous also because there is no evidence on which to base that part of it which authorizes the jury to find that the testimony of prosecutrix as to the promise of marriage has been corroborated "by facts and circumstances such as usually attend an engagement of marriage." State v. Wheeler, 108 Mo. 665; State v. McKaskey, 104 Mo. 646. (6) Instruction 6 for the State, on the subject of flight, is erroneous because it fails to direct the jury to take into consideration the facts or circumstances in evidence tending to explain defendant's flight consistent with his innocence. State v. King, 78 Mo. 557; State v. Walker, 98 Mo. 108; State v. Potter, 108 Mo. 430; State v. Brooks, 92 Mo. 585. (7) The court erred in overruling defendant's objections to the improper remarks made to the jury by the State's attorneys. Evans v. Town of Trenton, 112 Mo. 399; Holliday v. Jackson, 21 Mo. App. 670; Mahner v. Linck, 70 Mo. App. 388; Marble v. Walters, 19 Mo. App. 137; Haynes v. Town of Trenton, 108 Mo. 133; State v. Warford, 106 Mo. 65; State v. Woolard, 111 Mo. 255; State v. Jackson, 95 Mo. 654; State v. Reilly, 4 Mo. App. 395. (8) The court erred in refusing to grant defendant a new trial on the ground of newly-discovered evidence to the effect that prosecutrix had admitted having sexual intercourse with one Adam Zoph. State v. Wheeler, 94 Mo. 254; State v. Murray, 91 Mo. 103; State v. Bailey, 94 Mo. 316; Howland v. Reeves, 25 Mo. App. 466.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) No error was committed in overruling defendant's application for a continuance: First, because it fails to disclose proper diligence on the part of defend-

ant; second, defendant failed to state when the knowledge first came to him that the absent witness would testify to the facts therein set forth.    State v. Cummings, 88 S. W. 706; State v. Dusenberry, 112 Mo. 291; State v. Kindred, 148 Mo. 281.    (2)    Prosecutrix testified to the sexual intercourse, and also to the prior promise of marriage.    As to the corroboration of the former, there was the evidence of defendant's admission at a former trial.    In addition, we have the preparations made by prosecutrix to marry; and the fact, as testified to by her mother, that defendant kept company with her so much, from February till the last of August. His reason for quitting her company, as testified to by him at a former trial, was not that he heard anything derogatory to her character, but that he got tired of her. In addition, there was the unexplained flight of defendant.    The courts have frequently held that evidence to corroborate the promise of marriage may be by circumstances.    State v. Hill, 91 Mo. 423; Kenyon v. People, 26 N. Y. 203; Boyce v. People, 55 N. Y. 644; Armstrong v. People, 70 N. Y. 38; State v. Eisenhour, 132 Mo. 147; State v. Dent, 170 Mo. 406; State v. Davis, 141 Mo. 525; State v. Phillips, 185 Mo. 188.    (3)    State's instruction 1, which defines the crime of seduction under promise of marriage and the corroboration necessary, was proper, and has been approved.    State v. Wheeler, 108 Mo. 658; State v. Marshall, 137 Mo. 467. State's instruction 6. on the presumption arising from the flight of defendant was proper.    State v. Knowles, 185 Mo. 175.    (4)    No error was committed by the attorneys for the State during their arguments.    It was proper for them to comment on the evidence for the State, and that for the defense, and to draw all proper conclusions therefrom.    State v. Zumbunson, 86 Mo. 111; State v. Taylor, 134 Mo. 158; State v. Emory, 79 Mo. 461; State v. Griffin, 87 Mo. 608; State v. McNamara, 100 Mo. 100; State v. Findley, 101 Mo. 224; State v. Elvins, 101 Mo. 246; State v. Musick; 101 Mo. 273.

(5)   In his motion for a new trial, defendant alleges as a reason why it should be sustained that he had discovered new and important evidence.   All that the parties made affidavit to was an admission made to them by Adam Zoph and a letter which Zoph said he received from prosecutrix.   Clearly this was hearsay, as no affidavit of Zoph was filed.   Our law requires that an affidavit be filed by the witness, whose evidence has recently been discovered; otherwise, the application is insufficient.   State v. Bowman, 161 Mo. 94; Graham and Wat. on New Trials, 470.   This newly-discovered evidence was cumulative and corroborative of defendant's witness Weisman; it was also contradictory of the prosecutrix and simply tended to impeach her.   This was not sufficient.   State v. Welsor, 117 Mo. 583; State v. Campbell, 115 Mo. 393; State v. Bybee, 149 Mo. 635; State v. Butler, 67 Mo. 59; State v. Lucas, 147 Mo. 70; State v. Miller, 144 Mo. 30.   (6)   The evidence of defendant's guilt is as strong, if not stronger, than the evidence in other similar cases which have met with the approval of this court.   State v. Sharp, 132 Mo. 165; State v. Thornton, 108 Mo. 640.

BURGESS, P. J.—On October 16, 1901, the prosecuting attorney of Lewis county filed an information in the circuit court of said county charging the defendant with seducing and debauching one Hettie May Waterman, under promise of marriage, and stating that she was an unmarried female of good repute and under twenty-one years of age.   At the September term, 1903, of said circuit court, the defendant was tried and convicted and his punishment assessed at three years imprisonment in the penitentiary.   After unsuccessful motion for a new trial and in arrest of judgment, defendant appeals.

The facts are substantially as follows:

Hettie May Waterman and defendant were schoolmates and had known each other for years.   They were

quite friendly and were together on different occasions at entertainments, and visited friends and relatives, in each other's company, in town and country. On the first Sunday in March, 1901, according to her testimony, they became engaged to be married, but no definite time was fixed for the performance of the marriage ceremony. On June 21, 1901, the defendant took her to Quincy, Illinois, in company with several other young couples. Returning to their homes late in the evening, after dark, they crossed the Mississippi river and then drove home in buggies. Defendant and the prosecutrix rode in the same buggy, and while riding in the buggy he hugged and kissed the prosecutrix and told her how much he thought of her. After fondling her, the defendant assured her that he was going to marry her anyway and that no one would know anything about it should they have sexual connection. She testified that she thought a great deal of him, and finally yielded to his solicitations and had sexual intercourse with defendant thereafter in said county of Lewis. The testimony on the part of the State tended to show that prosecutrix was under nineteen years of age at the time of this sexual intercourse. Defendant continued his visits to her until August, 1901, when he discontinued his visits without giving her any reasons therefor. He did state to others, however, that it was because he "had gotten tired." On March 27, 1902, prosecutrix gave birth to a child, of which she testified the defendant was the father. She also testified that she had never had carnal connection with any other man, and she established a good reputation for chastity among those who knew her. She stated also that she made some few preparations for her marriage and had her mother and a few lady friends to assist her in making some clothes for that purpose. Her mother also testified to the attention of the defendant to her daughter and to his visits to her, and his taking her out with him on different occasions. In October, 1901, after it was discovered that the

prosecutrix was pregnant, her two brothers, George and William Waterman, went to see defendant at his home and stated to him that the purpose of their visit was to get him to marry their sister, as he was responsible for her condition. They asked him if he had not promised to marry her. He replied, "Yes, but I don't know what about marrying her." He afterwards, in the same conversation, told the brothers that he was not going to marry her. There was also evidence tending to show that shortly after this conversation defendant left the country and went to Nebraska and Colorado.

At a former trial of the case defendant testified and admitted having had sexual intercourse with the prosecutrix on their way back from Quincy, as stated by her, and also that he quit going to see her because he got tired of her.

On the part of the defendant, the evidence tended to show that two or three other young men kept company with prosecutrix about the time she and defendant were going together and that one of these young men took improper liberties with her. The defendant's mother testified upon the trial that she was at her home, a short distance away from her son, when the brothers of the prosecutrix called to see him, and that she did not hear the defendant promise to marry their sister; that they frightened the defendant. She testified also that she was the cause of his leaving the country and that he would not have gone but for her. Defendant testified in his own behalf that he did not promise to marry the prosecutrix and denied that he had ever so stated. There was also evidence of the good reputation of defendant prior to this trouble.

The first question presented for our consideration by this appeal is with respect to the action of the court in overruling defendant's motion for a continuance on account of the absence of one Fred Foreman, claimed to have been a material witness for defendant. The case had been pending in the circuit court since October 16,

1901, and was set for trial September 22, 1903, but not until September 17, 1903, five days before the day of trial, did defendant have a subpoena issued for the witness. This the State contends was not proper diligence. Applications of this character rest largely in the discretion of the court passing upon them, and will not be interfered with unless it clearly appears that such discretion has been unwisely or oppressively exercised. [State v. Banks, 118 Mo. 117; State v. Dettmer, 124 Mo. 426; State v. Hesterly, 182 Mo. 16.] No reason is given in the application why defendant did not have a subpoena issued for the witness at an earlier date, such as that he was not aware that the witness would testify to the facts set forth therein, until at or about the time he caused the subpoena to be issued for him. Moreover, this witness testified in behalf of defendant upon a former trial of this case and stated, as appears from the court stenographer's notes taken at the time, the same facts which defendant in his application states he would be able to prove by him if present; and his evidence thus taken was read to the jury by defendant upon the last trial of this cause. Under these facts, we are of the opinion that no error was committed in denying the application.

Mrs. Lillard, defendant's mother, testified as a witness in his behalf, and, after having stated that she told defendant to leave and that he would not have gone had it not been for her, was asked by defendant to state why she told him to leave. This question was objected to by the State and the objection was sustained. Defendant insists that the court erred in sustaining the objection, because the answer would have tended to show that defendant left on account of the persuasions and commands of his mother. This contention is untenable, for the reason that what defendant's mother may have said to him to induce him to leave the country was no legitimate excuse or justification for his doing so, was mere hearsay, and inadmissible for any purpose.

If, however, defendant had anticipated violence to his person from the populace or from the friends or relatives of the prosecuting witness, and fled the country in consequence thereof, he had the right to show this in explanation of his flight (State v. Phillips and Ross, 24 Mo. 475), but if to show this was the purpose of defendant, the question propounded did not go far enough, and his counsel should have stated in connection with the question the existence, if such was the fact, of public excitement and feeling in the neighborhood against the defendant in consequence of the offense with which he was charged, or any threatened violence to him by the friends of the prosecution, and that witness knew the facts and advised defendant to leave the country for his safety.   But this would not seem to have been the object of the question, and the objection thereto was properly sustained.

The point is made that instruction numbered one, given in behalf of the State, was erroneous in that it told the jury, with respect to the alleged promise of marriage of defendant to Hettie May Waterman, that before they could find him guilty they must believe from the evidence in the cause that the promise of marriage testified to in this cause by the said Hettie May Waterman, between her and defendant, "has been corroborated by evidence in the cause other than her own testimony, or by the admissions of defendant, or by facts and circumstances such as usually attend an engagement of marriage."   The contention is that the statute (sec. 2631, R. S. 1899) requires that "in trials for seduction under promise of marriage, the evidence of the woman as to such promise must be corroborated to the same extent required of the principal witness in perjury," which is by two witnesses, and that the admission of defendant that he had promised to marry her was not sufficient, but that it must be shown by other evidence.   This question was ruled adversely to defendant's contention in the recent case of State v. Whit-

worth, 126 Mo. 573, wherein a similar statement was held as corroborative of the testimony of the prosecutrix with reference to a previous promise to marry. [State v. Phillips, 185 Mo. 185.] Besides, there was other evidence from which the promise of marriage might well have been inferred. This finds support in the fact that defendant asked and the court gave an unusually strong instruction upon this branch of the case, in which instruction the jury were told that ''they cannot find that there was a promise of marriage upon the evidence of Hettie May Waterman alone, but her testimony must be *strongly* corroborated by other evidence sufficient to overcome the oath of defendant and the legal presumption of his innocence; that is, the testimony of the prosecutrix, Hettie May Waterman, as to the defendant's promise of marriage must be supported by *strong* and *clear proof* of facts and circumstances sufficient to establish said contract or promise of marriage and entitled to more weight with the jury than the testimony offered by the defendant.'' This instruction is erroneous, in that it is clearly a comment upon the evidence, the weight of which was for the consideration of the jury.

The first instruction given in behalf of the State told the jury, in so many words, that before they could convict defendant they must believe from the evidence that he was guilty beyond a reasonable doubt, and this was emphasized in more than one of defendant's instructions. Therefore, he has no ground for complaint on this score.

It is said for defendant that the court erred in not defining ''corroborated'' as used in the State's first instruction; but no such instruction was asked by defendant, nor was the attention of the court called to its failure to instruct upon the whole case. [State v. Cantlin, 118 Mo. 100, and subsequent cases.]

It is claimed that the State's sixth instruction is erroneous in that, while it authorizes the jury to take

into consideration defendant's alleged flight into the
States of Nebraska and Colorado in determining his
guilt, it fails to direct the jury to also take into consid-
eration the facts or circumstances in evidence tending
to explain his flight consistent with his innocence. In
answer to this contention it may be said there was no
evidence adduced by defendant upon which to base his
contention, nor even if there had been would the in-
struction be erroneous though it did not embody it, be-
cause the defendant had the right to ask an instruction
upon the question of his own motion, and that he did not
do so was his own fault.

Further complaint is made of the action of the
court in permitting the attorneys representing the
State, when addressing the jury, to go outside the rec-
ord, over the objection of defendant, and allude to mat-
ters not in evidence, to the prejudice of defendant. That
the discussion of some of these matters, without men-
tioning them specifically, went beyond the bounds of le-
gitimate argument must be conceded, and they should
not have been permitted, but we are not inclined to think
they in any way prejudiced the minds of the jury
against defendant. The statement by one of the attor-
neys that defendant was the father of the child of the
prosecutrix was authorized by her evidence to that ef-
fect, and there was no evidence to the contrary.

The testimony of witness Foreman tended to show
that he had taken liberties with Hettie May Waterman,
and the mere fact that counsel for the State said to the
jury that they ought to administer to the defendant such
punishment that Foreman, who was afraid to come into
court, would not follow in his footsteps, ought not of
itself reverse the judgment, especially when it is not
thought defendant was prejudiced by reason thereof.
While counsel in addressing the jury should confine
their remarks to the facts of the case under considera-
tion, as disclosed by the record and the evidence, a judg-
ment should not be reversed and a new trial granted for

every slight transgression by counsel of the character alluded to; but to authorize such a course the court should be satisfied that the improper remarks were prejudicial to the defendant and had some influence with the jury in arriving at their verdict, which we do not think was the case in this instance.

Another alleged error of which complaint is made is the overruling of defendant's motion for a new trial upon the ground that "defendant has discovered new and material and competent evidence in his behalf since the verdict of the jury, and which evidence he did not discover before the trial, though he used due diligence." The motion for a new trial was filed at the September term, 1903, of said court, and the same was by order of court continued till the next (December) term, 1903. Leave was given defendant to file affidavits in support of said motion on or before November 21, 1903, and leave was given the State to file counter affidavits on or before December 4, 1903. Defendant never made affidavit to the motion till the 26th day of November, 1903, several days after the expiration of the time for filing affidavits. In his affidavit defendant swears that he never learned of this newly-discovered evidence until the 24th day of November, 1903. How he knew of it and why he stated the same as one of the grounds of error in his motion for a new trial (filed two months before) is indeed difficult to understand. Again, the affidavits made by Henry C. Gamm and Arthur Shumate were not filed till November 25 and 26 respectively. All that these parties made affidavit to was an admission made to them by Adam Zoph and statements made by Zoph with respect to the contents of a letter which he claimed to have received from the prosecutrix. Notwithstanding these affidavits in support of the motion were filed out of time, the court clearly had the discretionary right to permit this to be done and to take them into consideration in passing upon the motion; but they were entitled to no weight or consideration, and should

not have been allowed to be read in evidence, for the reason that the matter set forth in them was, in the first place, merely hearsay, and in the second place, could not have been properly admitted for any purpose other than to impeach the prosecuting witness by show ing that she. had made contradictory statements, for which no foundation had been laid. [State v. Welsor, 117 Mo. 570; State v. Miller, 144 Mo. 26, and authorities cited; State v. Bybee, 149 Mo. 632.] She occupied the same position with respect to her impeachment upon such grounds as any other witness, and it could only be done by laying the proper foundation therefor.

There is no merit in the assumption that the verdict of the jury was the result of bias or prejudice on the part of the jury against the defendant. There is nothing whatever in the record to justify such a charge. Upon the other hand, there was plenty of evidence, if true, to justify the verdict, and of the truth and weight of the evidence the jurors were the sole judges; besides, the verdict and judgment appealed from was the second against the defendant in this case, which tends to show otherwise than as claimed upon this feature of the case.

A final contention is that the court should have granted defendant a new trial upon the ground that there was no evidence that the alleged offense occurred within the territorial jurisdiction of the trial court. The evidence clearly showed that the offense was committed in Lewis county, in which the court was held, and plainly within its jurisdiction. The same question was passed upon by this court in the recent case of State v. Hall, 189 Mo. 262, and decided adversely to defendant's contention.

We have given all the points presented by this appeal full consideration, and finding nothing in the record which would justify a reversal of the judgment, it is affirmed.

All concur.