BENJAMIN K. WILLIAMS *v.* STATE OF MISSISSIPPI.

[45 South., 146.]

1. CRIMINAL LAW AND PROCEDURE. *Continuance. Discretion.*

> The granting of a continuance is largely in the discretion of the trial court and a refusal to continue a case will not be reversible error where there was no abuse of the discretion.

2. SAME. *History of the cause. Previous applications.*

> Facts examined in the light of the history of the cause and previous continuances and the denial of an application approved.

3. SAME. *Seduction. Code 1892, § 1298. Code 1906, § 1372. Offer to marry. Effect on offense.*

> Under Code 1892, § 1298, Code 1906, § 1372, defining seduction as the obtaining of carnal knowledge of a previously chaste woman through a false or feigned promise of marriage, a subsequent unaccepted offer by the seducer to marry the prosecutrix will not bar a conviction.

FROM the circuit court of Calhoun county.

HON. J. T. DUNN, Judge.

Williams, appellant, was indicted and tried for the seduction of Fanny Carpenter, a female child over eighteen years of age, was convicted and sentenced to the penitentiary for one and one-half years, and appealed to the supreme court.

The indictment was based on Code 1892, § 1298 (Code 1906, § 1372), quoted in the opinion of the court. The testimony for the state made out a strong *prima facie* case of guilt. The defendant, while denying that the circumstances were such as to make him guilty of the statutory crime, admitted having had illicit sexual intercouse with the prosecutrix. He further testified that some time after the commission of the acts whereof the indictment was predicated he offered to marry the prosecutrix which offer she refused. On cross-examination he admitted that he had made such subsequent offer solely to exempt himself

from criminal prosecution. The trial court, at the time of the admission of evidence and also later in the instructions to the jury, held that the defendant's subsequent offer of marriage could be considered by the jury, not as exempting defendant from criminal liability, if his guilt were proved, but merely for the purpose of showing the good faith or falsity of the alleged promise to marry on the faith of which it was claimed the woman yielded her person to him. The facts are further stated in the opinion of the court.

*Wm. C. McLean,* for appellant.

Inasmuch as several witnesses, who had been duly subpoenaed in appellant's behalf, were not present when the case was called for trial, the trial court should have granted appellant's application for a continuance. It has been decided by this court in *State* v. *Norton,* 72 Miss., 128, 16 South., 264, 18 South., 916, that before a man can be convicted of seduction of a female over a certain age it is imperatively necessary that the female should be chaste and that the seduction should have been brought about by reason of a false or feigned promise of marriage.

The appellant's application for continuance showed that the testimony of these absent witnesses would have weighed heavily against the chastity of the prosecutrix and against her having been deluded by any promises of marriage. By one witness the appellant expected to prove that the prosecutrix had been seen in questionable resorts soon after she left her home with appellant, and that she had stated at the time to the witness that she had been "in that business for years." By another witness the appellant expected to show that the prosecutrix had stated, soon after leaving her home with appellant, that she didn't expect ever to marry appellant, but was leaving with him because of the way she was treated in her home. By another witness appellant expected to prove that the prosecutrix had, some short while before her trip with appellant, threatened to sue another man for seduction. If these things were true, then

the prosecutrix was not chaste, and accordingly the appellant could not be held guilty of the statutory crime.

It is not for the court to pass upon the weight of testimony, but solely upon its materiality. The proposed evidence was not only competent, but material; and after the case was over and all of the admitted evidence before the jury, the proposed evidence of these absent witnesses became doubly apparent.

The trial court, in refusing the appellant's application for continuance, seemed to proceed upon the idea that because the case had been continued for some terms it therefore ought not to be continued again. But certainly if just ground exists for a continuance at a term of court, the fact that there had been continuances of the case at previous terms will not act as a bar to the granting of the continuance asked.

The trial court, in ruling on the evidence, and in passing upon the instructions, seems to have acted on the idea that a guilty party's *bona fide* offer of marriage of the woman seduced, made to her after her seduction, is no defense. We think this was reversible error. In *People* v. *Gould,* 70 Mich., 240, 14 Am. St. Rep., 497, the Michigan court in discussing this subject, says: "The gravamen of the offense under the statute is not the mere fact of intercourse. Two elements must enter into it, namely, seduction and debauchery, and, if there be not concurrence of these two, the statutory offense will not be complete." See also *State* v. *Otis,* 135 Ind., 270.

The offense at which Code 1992, § 1298, is aimed, is seduction and debauchery accomplished by the seducer's prior or concurrent promises of marriage. It is a broken promise which the law will consider as an important factor in the offense. It must follow that where seduction is accomplished under promise of marriage and the promise is subsequently kept or sought to be kept, no conviction can be allowed; and, hence, the question of good faith or want of good faith upon the part of the man in entering into such marriage cannot be considered on the ques-

tion of his guilt or innocence. *Commonwealth* v. *Eicher*, 4
Pa. L. J., 326; *State* v. *Otis, supra.*

We call attention to the phraseology of the statute, "by virtue
of any feigned or false promise of marriage." How can a
promise of marriage be feigned or false when the man carries
out or is willing to carry out his promise? The law cares noth-
ing for what intent or motive may have caused him to carry
out such promise, after he has fulfilled what he promised to do.
It must accordingly follow that the subsequent *bona fide* offer
of marriage made by the seducer to the seduced is a complete
answer in law to a charge of seduction under our statute law
when the seduction was brought about by the seducer's prior
or concurrent promise of marriage. *Wright* v. *State,* 31 Tex.
Cr. Rep., 354, 27 S. W. Rep., 815, 37 Am. St. Rep., 822.

It has been held that the marriage of the parties to the se-
duction, though followed by the desertion of the husband, is a
defense to an indictment for seduction, and so is a *bona fide*
offer of marriage. 2 Wharton, Crim. Law, § 760. As throw-
ing light upon this question in different states wherein the mat-
ter is dependent upon statute law, see *State* v. *Brandenburg,*
118 Mo., 21, s. c., 40 Am. St. Rep., 362; *Caldwell* v. *State,* 69
Ark., 322; *State* v. *Bierce,* 27 Conn., 319; *People* v. *Gould,* 14
Am. St. Rep., 497; *State* v. *Adams,* 25 Ore., 172; *People* v.
*Samoset,* 97 Cal., 488; *People* v. *Hough,* 120 Cal., 588.

*R. V. Fletcher,* attorney-general, for appellee.

The granting of an application for a continuance is largely
within the trial court's discretion, and not subject to review in
the absence of abuse. There had been several continuances
granted previous to the term at which appellant was tried and
convicted. Nearly five years had elapsed between the finding
of the indictment and the date of trial. At least three of the
former continuances were the result of applications made by ap-
pellant, and these applications stated what witnesses absent at

the respective terms would testify. Some of these witnesses did testify on the trial subsequently, and a comparison of their testimony with the allegations in the applications showing what they were expected by appellant to prove will help to illustrate the reckless method of appellant in attempting to get continuances. The record shows that appellant, although fully aware of the pending indictment prior to the trial term made absolutely no move to secure some of the witnesses upon whose absence from court he subsequently made his last application for continuance. It appears that at the preceding term of court, when a continuance was granted, the state's witnesses were cautioned to be present at the ensuing term, but that appellant's counsel gave no such notice to appellant's witnesses. In fact, it nowhere appears satisfactorily that any of appellant's alleged absent witnesses had ever been in attendance upon the court at any previous term or had ever been subpoenaed prior to the term when the case was tried. Furthermore the record discloses that many of the alleged facts expected to be proved by absent witnesses were shown in evidence on the trial by the testimony of other witnesses for appellant.

As concerns appellant's offer to marry his victim after the wrong, it should be noted that the seduction was accomplished upon an express promise to marry at a particular time and place, namely, the day after the offense and at the town of Walthall. That promise was by appellant wilfully broken, as also were numerous other promises made during the week in which appellant was traveling from place to place with the prosecutrix. Appellant distinctly testified that his subsequent offer of marriage was made solely to escape prosecution. No love nor affection nor sense of duty moved appellant to make the offer.

The cases cited by appellant to show that his subsequent offer was a defense in law to the charge against him are either inapplicable owing to special statutes or else opposed to the great weight of authority. The case of *People* v. *Gould,* 14

Am. St. Rep., 497, discusses the effect of a subsequent marriage, not merely an unaccepted offer to marry with intent solely to escape punishment. The same is true of *Commonwealth* v. *Eicher,* 4 Pa. L. J., 326. The case of *Wright* v. *State,* 31 Tex. Crim. Rep., 354, was decided on a special statute. And examination of all the other cases cited by appellant will be found to be either inapplicable or based upon statutory provisions.

In the absence of a statute making a subsequent marriage a bar to prosecution the Connecticut supreme court has held that a subsequent marriage was no defense; but other courts have held that it was a defense on the grounds of public decency. But in a case such as this, where there was no marriage, where the appellant himself admits that his subsequent offer of marriage was solely, to protect himself from the penitentiary walls, where no consideration for the woman characterized his actions throughout, the authorities are clearly against appellant. 25 Am. & Eng. Ency. Law (2d Ed.), 249, and cases there cited; 2 McClain's Crim. Law, § 1116; Wharton's Crim. Law, 605; *State* v. *Mackey,* 82 Iowa, 393.

Argued orally by *W. C. McLean,* for appellant.

MAYES, J., delivered the opinion of the court.

The first question presented by this record is the action of the trial court in refusing the application for continuance. An application for continuance is largely addressed to the discretion of the trial court, and is subject to review by this court only when it is manifest that there has been an abuse of this discretion. Looking into the history of this case as disclosed by the record, it is our judgment that the action of the trial court in refusing the continuance was eminently proper. The history of this case shows that this indictment was found at the March term, 1902, and was continued on application of defendant. At the September term of the court following it was again continued on the application of the defendant. At the March term, 1903,

the indictment was demurred to, the demurrer sustained, and
the defendant placed under bond to await the further action of
the grand jury.   At the September term of the court, 1903,
the defendant failed to appear in accordance with the condition
of the bond, whereupon the bond was forfeited, and a *scire facias*
issued to the bondsmen, with an *alias capias* for the defendant.
At the March term, 1904, the case was continued again; the
record being silent as to who applied for the continuance.   At
the September term, 1904, another judgment *nisi* was taken on
the bond, another *alias capias* issued for the defendant, and a
*scire facias* to the bondsmen.   At the March term, 1905, there
was another continuance.   At the September term, 1905, the
case was continued on the application of the defendant.   At
the March term, 1906, the bond was again forfeited by the fail-
ure of the defendant to appear, and a *scire facias* issued to the
bondsmen, and an *alias capias* for the defendant.   The case was
finally called for trial at the September term, 1906.   Thus it
is that, when this case was finally called for trial, for nearly
five years, by virtue of continuances and forfeitures, it had
wearily dragged its way in the courts and the defendant had
escaped trial.   The course which this cause had heretofore
taken was a matter for the consideration of the court.   The de-
lays which had occurred in the trial, and the cause of those de-
lays, all were proper subjects to be considered in determining
the good faith of the application, and in considering whether
or not the continuance should be granted.   A proper exercise
of the discretion vested in the trial court as to the allowance or
refusal of further continuances prompted it to be more rigid
in granting this application than it would have been, had this
application been the first application made.

In the attitude of this case at that time, nothing but the ut-
most diligence on the part of the defendant would warrant the
court in further continuing the cause, and the record does not
show this on his part.   On the contrary, at the court term prior
to the term at which this trial was had, the defendant had per-

mitted a forfeiture to be taken on his bond and his witnesses to be dispersed without seeing to it that they were resummoned. We do not decide that in every case where a forfeiture of the bond occurs it is necessary for the defendant to resummon his witnesses, nor do we decide that where he has permitted a forfeiture to be taken on his bond for nonappearance it is not necessary for him to resummon the witnesses. Whenever this question is presented, it will have to be determined in the light of the particular facts of the case. We only decide that upon this record, in view of the fact that there had been five continuances and three forfeitures of the appearance bond, it was the duty of the defendant to exert every means known to the law to be ready to submit himself for trial at the next succeeding term after the forfeiture, and in this case diligence required that he summon each and every witness whom he proposed to use at this term of the court, and that he avail himself of every process of the law in order to enable him to be ready for trial, before any further application for continuance by him would be entitled to serious consideration by the court. There must be a time at which persons charged with crime must meet the indictment. There is much in the record of this case to lead to the belief that the delays and applications for continuance have been brought about in an effort to evade the trial. It has been the repeatedly announced rule of this court that, in the matter of applications for continuance made to and refused by it, this court will not reverse unless its action is manifestly wrong. No absolute rule can be laid down as to what matters will constitute good ground for continuance. In all cases this must be largely left to the discretion of the court, as appears in each particular case where the continuance is applied for. 4 Ency. Pl. & Pr. 828, and note; *Strauss* v. *State,* 58 Miss., 867; *Hemingway* v. *State,* 68 Miss., 371, 8 South., 317; *Parker* v. *State,* 55 Miss., 414; *State* v. *Dettmer,* 124 Mo., 426, 27 S. W., 1117.

The only other question in this case which we deem it necessary to notice is that wherein contention is made that where the

guilty party offers to marry the prosecutrix after the seduction has been accomplished by a false and feigned promise of marriage, and this offer is refused by the prosecutrix, the guilty party is no longer subject to prosecution. This is the question which is raised by the instruction. In order to properly consider this question, it will be necessary to quote the statute. This prosecution arises under Ann. Code 1892, § 1298 (Code 1906, § 1327), and is as follows: "If any person shall obtain carnal knowledge of any woman, or female child, over the age of eighteen years, of previous chaste character, by virtue of any feigned or pretended marriage or any false or feigned promise of marriage, he shall, upon conviction be imprisoned in the pentitentiary not more than five years; but the testimony of the female seduced, alone, shall not be sufficient to warrant conviction." When the seduction has been accomplished by any false or feigned promise of marriage, the crime is then complete. When the crime has been committed by virtue of the false or feigned promise, no subsequent offer of marriage can in any way operate to excuse it or defeat prosecution for the crime. It might just as well be argued that if a man committed burglary, and when caught and placed upon trial returned the property stolen, a prosecution for the crime should thereby be barred, or if a thief be caught, and when indicted he return the stolen property, he cannot be further prosecuted. The crime made by this statute is committed the instant carnal knowledge is obtained of a woman or female child, of the years and character described in the statute, by virtue of a false and feigned promise of marriage. He cannot escape the consequences of his guilty act by anything which he may offer to do afterwards. His guilt is not made to depend upon the fact that, when caught and prosecuted for the crime, he then for the first time makes a bona fide offer of marriage. The character of his act has made him a criminal beyond any escape, so far as anything he may do, at the very instant he accomplished the wrong by a false and feigned promise of marriage. It might well be that, upon a

realization of the great wrong which has been perpetrated upon her by the guilty party, a woman would revolt at the idea of uniting herself to the author of her ruin. It might be that she would treat with indignation and scorn a proposition of marriage from one who has led her away from the paths of virtue by feigned and false promises and deceptions. The mere fact that the offer of marriage is refused ought not to operate as a pardon to the false and treacherous man who has authorized this ruin; but it ought rather to aggravate the crime which he has committed, and this is the view which most of the authorities take.

We are not dealing with the case where there has been an offer of marriage by the guilty party, which has been accepted by the prosecutrix, followed by an actual marriage of the parties. In such a case the marriage might or might not constitute a bar to the prosecution; but, if it did constitute a bar to the prosecution, it would be for considerations of public policy, and not of leniency toward the guilty seducer. The question of good faith or bad faith of an offer of marriage made subsequent to the seduction cannot operate as a bar to the prosecution when it is not accepted by the prosecutrix. The offer of marriage, made subsequently, may be given in evidence merely for the purpose of showing the good faith or falsity of the alleged promise to marry at the time of or prior to the seduction, and the jury were so instructed. On page 605 of the second edition of Wharton's Criminal Law, in note 6, it is said: "An offer of marriage, made after seduction, which is refused by the prosecutrix, is not a bar to the proecution." In the case of *State* v. *Mackey,* 82 Iowa, 393, 48 N. W., 918, the same rule is laid down. This same authority, in speaking of the Kentucky statute and of the Texas statute, states that both the Kentucky court in the case of *Commonwealth* v. *Wright,* 27 S. W., 815, and the Texas court in *Wright* v. *State,* 31 Tex. Cr. R., 354, 20 S. W., 756, 37 Am. St. Rep., 822, have held differently. But an examination of the cases where the courts have held differently will show that they are construing statutes of their own dealing with this subject,

and that the particular decisions which seem to hold contrary to the view announced in this opinion are predicated of the provisions of the statutes of these two states. In section 1116 of McClain's Criminal Law it is said that "an offer of defendant to marry the prosecutrix that is unaccepted by her is not a bar to the prosecution for the seduction, and is immaterial." In 25 Am. & Eng. Ency. of Law (2d ed.) p. 249, it is said: "The great weight of authority supports the view that the guilty party cannot escape punishment by a mere offer of marriage, unless it is accepted by the injured woman, and that nothing but an actual marriage is a bar to the prosecution." We cite these authorities, and in the footnotes to each will be found many cases from numerous states holding that an offer of marriage, made subsequent to the seduction, cannot operate as a bar to a prosecution, where that offer is unaccepted by the prosecutrix.

We are not called upon in this case to decide whether or not, even if the prosecutrix had married the defendant, it would have been a bar to further prosecution, because that is not this case. In this case she refused the offer, and did not marry him, and the question which we have to consider here is whether or not, he having accomplished her ruin by means of a false and feigned promise of marriage, any subsequent offer, made by him to marry her at a time after the seduction is an accomplished fact, can operate to excuse him from the crime committed and prevent further prosecution. We have no hesitancy in announcing that no subsequent offer made by him can excuse his crime. If it be argued, as it is, that this holding would place the man at the mercy or the whim of the woman whom he has wronged, our answer is that the guilty party has no right to complain of such result. The crime is the seducing of a woman by a feigned and false promise of marriage. When he committed the crime he had no idea of carrying into effect any promise made; but he used this promise to accomplish her ruin, and it does not lie in his mouth to complain, when discovered and confronted with the penitentiary, that the woman whom he has wronged

refuses to condone that wrong and keep him out of the penitentiary by marrying him. It was his purpose to deceive her, he did deceive her, and if he had not been arrested, or threatened with arrest, there most probably never would have been any offer of marriage by him after he had accomplished his purpose. Her rejection of his offer of marriage, made subsequent to the accomplishment of her ruin, is not the thing which creates the crime; but it is his own false act. Her action neither increases, diminishes, nor creates the wrong. He has only himself to blame. It may be observed in this particular case that it is plain from this record that defendant did not make the offer of marriage in good faith, intending to live with the prosecutrix after the marriage, but that it was made for the purpose of trying to avoid prosecution; it being his purpose to abandon the woman as soon as he had married her.

We do not think it necessary to discuss the other questions raised in the assignment of error, as we think none of the criticisms of the instructions constitute in this case reversible error.

*Affirmed.*