JAMES DEAN *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Homicide. Murder. Principal and accessories.*

One who aids, assists, and encourages a murder is a principal, and not an accessory; and his guilt in no wise depends upon the guilt or innocence, the conviction or acquittal, of any other alleged participant in the crime.

2. SAME. *Instruction. Designating killing as murder.*

If it be unquestionable that a murder was committed, and the only inquiry be as to the identity of the criminal, reversible error cannot be predicated of an instruction because it refers to the crime as murder.

3. SAME. *Evidence.*

In a trial for murder, committed as a result of a conspiracy to rob the deceased, the admission of testimony tending to show that money was in the decedent's house before the murder and not there afterwards, and that decedent's wife was murdered and the house burned during the same night the deceased was killed, is not reversible error.

FROM the circuit court of Holmes county.

HON. A. McC. KIMBROUGH, Judge.

Dean, the appellant, was indicted, tried, and convicted of murder and sentenced to be hanged, and appealed to the supreme court.

Dean was jointly indicted with William and Samuel Campbell for the murder of one Washington Honey. There was a severance, and Dean was tried, with the result above stated. His motion for a new trial was overruled.

The evidence showed that on the night of the 18th of December, 1903, Washington Honey and his wife were murdered in Holmes county, their bodies placed on a bed, face down, in their cabin, and the cabin burned. That on examination of their bodies it was found that they had been killed by blows with some blunt instrument. They occupied the cabin alone, which was about a mile and a half from the residence and store on the same plantation. That Washington Honey had $55.25 in silver at his home, and nothing could be found of this silver after the cabin was burned. That early in the night of December 18th he went to the store and made arrangements to make a crop for another year with the manager and storekeeper, who lent him $25. Dean was seen at the store, peering through the window where and when Honey was paid the $25. Washington Honey and his brother and another man left the store together about eight o'clock in the evening to go home, and Dean left after them, riding a white mule, with a woman riding behind him, and four shots were heard by witnesses who left the store going in the same direction after the departure of Honey and his party. That on the night of the murder Dean brought the woman, Louisa Smith, from Tchula to the store, and took her home with him, where the two stayed that night. This woman testified that she heard Dean and William Campbell plotting at the store to rob Washington Honey and his wife, and that, when Washington Honey was getting the money at the store, Campbell said to Dean he would have that money if he had

to get a crowd and kill him, and told Dean to fire a pistol five times after Washington left the store to let it be known that Washington had started home; that she and Dean rode on behind Washington, and Dean fired the pistol four times, she preventing him from firing the fifth time; that they came up behind Washington about sixty feet from his home, and were near him when William Campbell struck him in the face with an ax; that Washington fell, and Dean helped the other two, Samuel and William Campbell, carry him into the house and lay him in the bed beside his wife, who was dead; that the ax was left in the middle of the floor; that Dean asked one of the Campbells how much money they got from the woman, and he said it had not been counted; that after leaving the house the two Campbells returned, saying they would burn it.

The defendant offered in evidence the record showing the acquittal of William Campbell of the murder of Washington Honey, which was excluded by the court, and he also offered to prove that the witness, Louisa Smith, was in custody, charged with the same crime for which defendant was being tried. This was excluded.

The defendant assigned as error the giving of the second, third, fourth, and fifth instructions for the state, and the refusal of the eleventh asked by defendant; the exclusion of the record and the evidence of the charge against the Smith woman; the admission of evidence for the state tending to show that Cora Honey, wife of Washington Honey, was murdered; the admission in evidence of the fact that the silver money was in the house before the murder and not there afterwards; the admission of the evidence of the burning of Washington Honey's house.

The instructions complained of are as follows:

"(2) The court instructs the jury that the law does not require you to know that the defendant is guilty before you return a verdict of guilty as charged, but only that you should

believe him guilty, beyond all reasonable doubt, from all the evidence considered together.

"(3) The court instructs the jury that if they believe from the evidence, beyond a reasonable doubt, that Washington Honey was murdered as alleged in the indictment, and that on the night of the killing, and before the murder, James Dean had an agreement with the person who actually committed the murder that he, James Dean, would aid in the murder or robbery of Washington Honey that night by firing his pistol to give notice that Washington Honey had left the store and was on his way home, and that such firing for such purpose was done by James Dean pursuant to such agreement, and that the three—Dean, Samuel Campbell, and William Campbell—then met and murdered Washington Honey, then the jury should find James Dean guilty of murder.

"(4) The court instructs the jury that if they believe from the evidence, beyond a reasonable doubt, that James Dean was present at the time of the killing of Washington Honey, with intent to aid and abet in the murder of Washington Honey if his assistance became necessary, and that Washington Honey was murdered as charged in the indictment, then James Dean is as guilty as the one who did the killing, though he may not have actually taken any other part in such homicide.

"(5) The court instructs the jury that if they believe from the whole evidence, beyond a reasonable doubt, that Washington Honey was murdered, and that James Dean aided, assisted, and encouraged William Campbell or any other person in murdering Washington Honey, then he is as guilty as such other person, and the jury should return a verdict of guilty."

The eleventh charge asked for defendant and refused was as follows: "(11) The court instructs the jury that they cannot find the defendant guilty if they have a reasonable doubt as to whether William Campbell did willfully and feloniously, and of his malice aforethought, kill and murder Washington Honey."

*R. C. McBee* and *S. M. Smith,* for appellant.

The second instruction for the state was an attempt to define a "reasonable doubt," or rather to state what would not be a reasonable doubt, and in effect charged the jury that they might convict on a less degree of certainty of guilt than the law requires.

"The law does not require you to know," etc. The knowledge referred to is, of course, that character of knowledge that is based on information received from others—to wit, the witnesses in the case; for if the members of the jury themselves possessed actual personal knowledge of the fact, they would have been disqualified to serve in the case.

This character of knowledge is "nothing more than a man's firm belief." 18 Am. & Eng. Ency. Law (2d ed.), 67, 68. "Know," as defined by Webster, means "to be aware of as true or actual; to have mental cognition of; to perceive or apprehend clearly; to be convinced of the truth of; to have information of; to be assured of." Apply either of the above definitions to the above instruction and the same will be seen to be erroneous. *Williams* v. *State,* 73 Miss., 823; *Powers* v. *State,* 74 Miss., 777; *Jones* v. *State,* 36 South. Rep., 243.

The third instruction for the state is erroneous. First, it does not correctly announce the law of conspiracy; and second, it refers to the crime under investigation as "the murder," and to appellant's alleged principal as "the one who actually committed the murder."

It is for the jury to determine whether an act done by a member of a conspiracy is done in furtherance of the common design, as well as what are the natural and necessary consequences of such act. 6 Am. & Eng. Ency. Law (2d ed.), 872; *Spies* v. *People* (Ill.), 3 Am. St. Rep., 320; *Bowers* v. *State* (Tex.), 5 Am. St. Rep., 901; *Amos* v. *State* (Ala.), 3 South. Rep., 751; *Tanner* v. *State* (Ala.), 9 South. Rep., 615; *State* v. *Furney* (Kan.), 13 Am. St. Rep., 267; *Powers* v. *State* (Ky.), 53 L. R. A., 253.

This principle of the law of conspiracy was lost sight of by the court below in passing on this instruction, and it was assumed as matter of law, instead of being left to the jury as a question of fact, that if the deceased was murdered by one of the parties to a conspiracy to rob, such murder was committed in furtherance of the common design.

Appellant was jointly indicted with William Campbell, all the evidence in the case showing that if he was guilty at all, it was of aiding and abetting William Campbell, and not any other person. The only witness who claimed to have been present at the alleged killing fully identified William Campbell as the one who struck the blow, and by her testimony negatived the possibility of its being done by "any other person." No inference could be drawn from the evidence that "Dean aided, assisted, and encouraged . . . any other person in murdering Honey," except Campbell. Under the evidence he was either guilty of aiding and abetting Campbell or he was innocent. It is true that by the evidence for the defense Campbell was shown to have been at another place at the time in question, but that cannot change the rule. Would the state, in rebuttal, have been allowed to prove that its evidence in chief was not true, and that another person had actually struck the blow? Grant that it is not necessary for the proof to show who was the actual principal, but when the proof does show who was the principal, the state must then stand or fall by the guilt of the proven principal.

The record of acquittal of William Campbell was admissible in evidence on two grounds: First, under the authority of *Crum* v. *Wilson,* 61 Miss., 233, and *Jones* v. *State,* 66 Miss., 380; and second, because under the third instruction for the state, appellant's guilt depended upon the existence of a conspiracy to which William Campbell was a party.

A guilty aider and abettor, of course, presupposes a guilty principal. *Strait* v. *State,* 77 Miss., 693. And if the principal is innocent, the aider and abettor must be innocent also; and,

in reason, it follows that the record of acquittal of the principal is available to the aider and abettor subsequently tried.

*William Williams,* attorney-general, and *Noel, Pepper & Elmore,* for the appellee.

The trial court was exceedingly liberal to appellant in the matter of instructions on reasonable doubt. In behalf of defendant it went to the extreme verge of that doctrine, and probably a little beyond. 1 Blashfield on Instructions to Juries, 385, 391.

The criticism of the third instruction takes the view that the law of conspiracy is strained too far in its reference to intended robbery culminating in murder, and that the reference to the crime under investigation as "the murder" and to appellant's alleged principal as "the one who actually committed the murder" are assumptions of facts.

Appellant claims that murder and robbery are such unrelated crimes that the conspiracy to rob does not include murder as one of the natural or probable incidents. It will be remembered—instructions should be considered as applied to the evidence—that the state's evidence showed that William Campbell was present when Washington Honey was paid money, and informed appellant he would have that money if he had to kill, and that appellant· and one of the state's witnesses followed Honey to the place of the killing and were present, appellant helping to dispose of the body and asking for part of the money. This court held in one of the last reports, *Smith* v. *State,* 82 Miss., 793, that an indictment for robbery, omitting to allege putting in fear of immediate danger to his person, was fatally defective. Threatened death is the usual means of effecting robbery, and execution of the threat frequently results.

All who conspire to do such unlawful act as will probably result in taking of human life are presumed to have understood the consequences which might reasonably be expected from car- ·

rying it into execution and to have given their assent. *Spies* v. *People,* 122 Ill., 226; *Peden* v. *State,* 61 Miss., 267; *Lusk* v. *State,* 64 Miss., 850; *Brabston* v. *State,* 68 Miss., 219; *McGehee* v. *State,* 62 Miss., 772; *Wynn* v. *State,* 63 Miss., 264; *Pollard* v. *State,* 53 Miss., 410.

The objection raised to the fourth instruction is, chiefly, that something more is required to convict a principal in the second degree than presence at a murder with intention to aid and abet if it became necessary. This instruction is the same as that approved in *Wynn* v. *State, supra.* The same doctrine has been announced time and again in this state. *McCarty* v. *State,* 26 Miss., 303; Wharton on Homicide, sec. 333.

While sec. 950, Code 1892, provides for the indictment and punishment of accessories before the fact as principals, it is unnecessary to invoke that statute. At common law Dean was a principal, originally a principal in the second degree, a distinction without a difference; and, as stated by Bishop in his Criminal Law, sec. 648, "There is no practical reason for retaining it in exposition of common law." As there shown and in his work on Criminal Procedure, 2d vol., sec. 3, convictions can be had without reference to whether the indictment is for principal in the first or second degree.

The record of acquittal of William Campbell was not admissible. An accessory before the fact is one who is not present at the time of the commission of the crime, but counsels, procures, or commands its perpetration. *Unger* v. *State,* 42 Miss., 642; 1 Am. & Eng. Ency. Law, 257, 258 (2d ed.); 2 Roscoe's Crim. Ev., 944.

If the defendant "be actually or constructively present when the felony is committed, he is an aider and abettor, and not an accessory before the fact." Hughes' Crim. Law & Procedure; 1 Hale P. C:, 615; *McCarty* v. *State,* 26 Miss., 303.

Both at common law and under our law abettors may be convicted, though the principal be acquitted. *People* v. *Bears,*

10 Cal., 68; *State* v. *Whitt*, 113 N. C., 716; *Searles* v. *State*, 60 Cir. Ct. Rep., 331.

"No evidence touching the guilt of the accused in the particular case on trial, of whatever sort, is rejected merely because it may disclose another offense." *Raines* v. *State*, 81 Miss., 497, 498.

TRULY, J., delivered the opinion of the court.

The chief argument in behalf of appellant, as to both the proof and the instructions, is based upon the fallacious assumption that he was merely an accessory of William Campbell, who was jointly indicted with him. This argument is unsound. Both at common law and by statute, appellant was a principal, and his guilt in no wise depends upon the guilt or innocence, the conviction or acquittal, of any other participant in the commission of the crime. If appellant "aided, assisted, and encouraged" in the murder, he was guilty as charged, whether his confederate was Campbell or "any other person," and the fifth instruction for the state correctly so announces.

Nor are the instructions for the state justly subject to condemnation by reason of the fact that they speak of the crime being investigated as "murder." Under the testimony in this case the degree of the crime committed cannot be questioned; the only inquiry was the identity of the criminal, and this was established by competent testimony to the satisfaction of the jury. In our judgment, no ruling of the court on the admission of the testimony constitutes reversible error under the facts of this record.

*Affirmed.*