## Carroll v. Commonwealth.

(Decided May 23, 1930.)

442

JOHN M. THEOBALD for appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

At the regular 1929 August term of the Carter circuit court, appellant, Clarence Carroll, was indicted and charged with the offense of murdering Estill Barker by shooting him with a pistol. At the following November term he was tried and convicted of voluntary manslaughter with an attached punishment of two years' confinement in the state penitentiary and relying in his motion for a new trial, which was overruled, on a number of alleged prejudicial errors committed at his trial, he prosecuted this appeal. In brief of his counsel in this court, all the grounds stated in the motion for a new trial were abandoned except three, and which are: (1) Error in overruling defendant's motion for a continuance; (2) error in refusing to direct his acquittal; and (3) that the verdict is flagrantly against the evidence—each of which will be disposed of in the order named.

The names of a number of absent witnesses were stated in the affidavit for a continuance, but some of them were present at the trial and the affidavit as to what the absent ones would testify to was read to the jury, except that of one Wral Dyer, an alleged eyewitness to the shooting. The commonwealth's attorney declined to consent that the testimony of that witness, as incorporated

in the affidavit, should be read at the trial upon the chief ground that, while confined in the Carter county jail upon a criminal charge, he forcibly effected his escape and was a fugitive from justice, his whereabouts being unknown. Upon the development of those facts, beyond contradiction and without explanation, the court declined to compel the commonwealth's attorney to agree that the incorporated testimony of that witness might be read by the defendant, and overruled his motion for a continuance, and it is of such rulings of the court that the principal and chief argument for a reversal is made.

The affidavit nowhere stated that the incorporated testimony of the absent witness Dyer was or would be true when so testified to by him, and which we have uniformly held to be essential to a proper affidavit for a continuance so as to entitle the applicant to the benefit of the testimony of the absent witness or witnesses. See cases cited in note 12 to section 189 of the Criminal Code of Practice, and the later ones of Rogers v. Commonwealth, 188 Ky. 817, 224 S. W. 348, and Belcher v. Commonwealth, 216 Ky. 126, 282 S. W. 550. It would therefore appear that defendant, in procuring the privilege to and actually reading to the jury the incorporated testimony of the other absent witnesses, obtained more than he was entitled to, and for that reason alone he has no legal cause to complain of the rulings of the court constituting this alleged error.

Independent, however, of that fact, the law seems to be, except in some exceptional cases to which this one does not belong, that neither a defendant in a criminal prosecution, nor a party to any civil litigation, is entitled to a continuance for an absent witness who is a fugitive from justice and whose whereabouts is unknown. Especially is that true in the absence of a showing of a reasonable probability that either the attendance of the witness or his testimony may be procured at the future trial of the case. There was no attempt to show any such facts at the trial of this case, and for that reason also the court did not err in the respects complained of. See Morris v. Commonwealth, 11 S. W. 295, 10 Ky. Law Rep. 1004; 16 C. J. 470, sec. 846, and cases cited on page 471 to note 35. Compare also Grigsby v. Commonwealth, 197 Ky. 506, 247 S. W. 373; Daniel v. Commonwealth, 170 Ky. 693, 186 S. W. 489, and City of Covington v. O'Meara, 133 Ky. 762, 119 S. W. 187. The two cases of Adams v. Commonwealth, 212 Ky. 334, 279 S. W. 332, and Adkins

v. Commonwealth, 218 Ky. 152, 291 S. W. 5, relied on by counsel as opposing that rule of practice, do not mention it at all, nor was it involved in either of them, and they are therefore clearly not in point.

In addition to the two points just discussed, it might be said that it is doubtful if we should sustain this ground in the absence of either of them, since defendant and two of his witnesses gave, in substance, the same testimony of the absent witness Dyer, and his testimony was and is clearly cumulative with that of those three who did testify at the trial, and, in the absence of some urgent reason why a fourth witness should also testify to the same facts, we are inclined to the view that the court did not abuse a sound discretion in overruling the motion for a continuance because of such facts alone. But, whether so or not, it is quite clear that for the two foregoing reasons the court was justified in making the orders complained of in this ground, and it therefore must be denied.

■■ The disposition of grounds 2 and 3 requires an examination into the evidence, since they challenge its sufficiency to authorize a conviction, the one (2) denying its sufficiency to authorize the submission of the case to the jury and the other (3) denying its sufficiency to sustain the verdict. The killing occurred at about 3 p. m. on Sunday, June 2, 1929, upon or near the grounds of a rural Baptist Church congregation in a remote section of Carter county, known as Pine Springs. Somewhere about 11 o'clock defendant arrived at the church with a young lady by the name of Stevens. After dismounting from their horses, she went into the church building, while defendant hitched his horse and went up the road some 400 yards, riding behind a friend of his by the name of Burl Holbrooks, and where they found a number of people, some of whom were afoot and others on horses, the latter riding up down the road, but the most or all of whom, it appears from the evidence in the case, were imbibing a different sort of spiritual relief than that being taught and administered in the church building. Holbrook, upon arriving at that place, discovered that one of his relatives was either engaged or about to become engaged in an encounter of some kind, and he dismounted, leaving defendant alone upon the horse, and he had in his hands what we take from the description as being an ox whip. In the meantime the deceased and his father had walked from the church to that belligerent

spot, and were standing beside the road. The father says that defendant either struck or struck at his son, the deceased, whereupon the latter grabbed defendant while sitting on the horse and tried to pull him off, but failing in that, he put defendant's hand in his mouth and severely bit it. Defendant and his witnesses deny that he either struck or attempted to strike the deceased with the whip, but that on the contrary deceased grabbed him by the hand while he was on Holbrook's horse and tried to pull him off, but, failing in the effort, he bit him severely through the hand. But, whatever might be the facts relating to that incident, the parties were separated, and, in subsequently relating it, defendant manifested considerable anger and stated to a number of witnesses that he intended to procure a pistol and kill the deceased for having bitten his hand, and a statement substantially to that effect was made but a short while before the killing occurred.

The church meeting adjourned somewhere in the neighborhood of 2 o'clock, at which time it had begun to rain. However, the people scattered and departed for their homes, but deceased had become considerably intoxicated, and the defendant also to some extent at least, and they with some few others were among the last to leave the scene. However, immediately following the adjournment of the services, defendant went to a nearby house of a man by the name of Stevens and there indulged in some threats and inquired of the whereabouts of the young lady whom he had escorted to church. On being told that she had gone up the road, he followed her and found her standing under a tree as a protection from the rain. He did not then take her to her home, but left, and in a little while came upon deceased in a nearby field or on the outskirts of the church grounds where the homicide occurred. He stated himself, which was corroborated, that, at the time of the first difficulty between 11 and 12 o'clock, and during which he was bitten in the hand by deceased, he did not have a pistol, and said to a number of persons that if it were not for that fact he would have then killed the deceased. He does not pretend to have left the church grounds between then and the time of the killing. Evidently, therefore, he hid his pistol at some place and repossessed himself of it later in the day.

Defendant and his witnesses testified to a state of facts which, if accepted literally as true, would excuse the homicide on the ground of self-defense, but the testimony as to what transpired immediately at the time of the killing as given by defendant and his witnesses is somewhat incoherent and incredibile, and is out of harmony with usual and ordinary human conduct. None of it satisfactorily explains why defendant, after repossessing himself of his pistol and reloading it with the accompanying threat that he was going to kill the deceased, later sought out the whereabouts of the latter on or near the churchyard after the services were over and the great majority of the attendants had departed for their respective homes. Neither did defendant, in giving his own testimony, nor any other witness introduced by him, explain away a number of suspiciously guilty circumstances and acts of defendant which the testimony proves occurred between the time of the first difficulty and the fatal moment; and, upon the whole, we conclude that the case was essentially one for the determination of the jury under all the facts and circumstances of the case, and that the court did not err in overruling defendant's motion for a peremptory instruction of acquittal nor in holding that the verdict was not flagrantly against the evidence. Rather do we reach the conclusion from all the testimony in the record that defendant was greatly angered and embittered toward deceased from and after their first meeting and at which the biting wound was inflicted by deceased, resulting in his determination to avenge that wrong to him upon the slightest and least provocation, and without any compunction on his part as to how it might arise. The circumstances and the proven intervening threats by defendant, plus his seeking out the spot where the deceased was located in an advanced stage of intoxication, have a most potent tendency to contradict defendant's testimony as to what actually transpired at the last and fatal meeting between the immediate parties to the encounter. Our conclusions, therefore, are that neither ground 2 nor 3 is available for a reversal of the judgment, and which disposes of all the arguments of counsel in support of the alleged prejudicial errors relied on for a reversal.

Wherefore the judgment is affirmed.