FUNDERBURK *v.* STATE.

Jan. 18, 1954

No. 38867        49 Adv. S. 10        69 So. 2d 496

*Claude F. Clayton,* Tupelo ; *W. M. O'Barr, Jr.,* Okolona ; *C. H. McCraine, Jr.,* Houston, for appellant.

598

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Leonard Funderburk, and his father, Henry Funderburk, were jointly indicted on a charge of assault with intent to kill and murder Doyle Vance, Mrs. Juanita Vance, Dwight Vance and Henry Vance. The indictment was returned by the grand jury in the Circuit Court of the First Judicial District of Chickasaw County at the April 1952 term of the court. A change of venue was granted and the case was transferred to Calhoun County for trial.

When the case was called at the September term of court in Calhoun County, a severance was granted and on the second day of the term the case against the appellant was called, and the State announced ready for trial. The appellant asked for a continuance on account of the absence of his co-indictee, Henry Funderburk, who, it was alleged, was a material witness in the case and was expected to testify on behalf of the appellant. The court passed the case until the following morning. The appellant then filed a formal motion for a continuance on account of the absence of his co-indictee, Henry Funderburk, and the appellant asked that a subpoena

be issued for him returnable instanter. The court refused to grant a continuance, but passed the case until the following day, and ordered that an alias capias be issued for the arrest of Henry Funderburk.

When the case was again called on the following day, the appellant filed an amended motion for a continuance; and in his amended motion alleged that the said Henry Funderburk was under bond to appear at that term of the court to answer the charge alleged against him in the indictment, and that the appellant had expected that he would be present in court without the issuance of other process, and that he would testify as a witness for the appellant. The appellant also alleged in his motion that he was informed and believed that, if the said Henry Funderburk were present, he would testify that on the night of the shooting he and the appellant had driven to the home of a Negro whom they expected to employ to assist them in certain logging operations which they were about to undertake, and that as they were proceeding along the road in front of the Vance home the members of the Vance family opened fire on the automobile in which they were traveling and continued to fire at the automobile until they hit the same with a number of shots; that the appellant at that time was not armed; and that the appellant did nothing whatever to harm any member of the Vance family. The appellant stated in his motion that he could not prove the above stated facts by the testimony of any other witness.

The court overruled the amended motion for a continuance, and set the case for call again on Saturday, September 27. On that day the appellant presented another motion for a continuance, and the court overruled the same. The court then set the case for trial at 9:00 o'clock Wednesday morning, October 1. When the case was called for trial at that time, the appellant again filed a motion for a continuance, which was in substance the same as the motion filed on the preceding Saturday. The

motion was overruled. The appellant then asked that the trial be postponed until he could have a doctor examine his mother for the purpose of determining whether she was able to appear and testify as a witness during the trial. This request was denied, and a jury was empaneled for the trial of the case.

The State's proof was substantially as follows:

Mrs. Juanita Vance testified that she was the wife of Doyle Vance, and that she and her husband and their two children lived about eleven miles northwest of the Town of Houston in Chickasaw County, and that the appellant, Leonard Funderburk, lived about a mile and a half from their home; that the Doyle Vance house was located on the west side of the road and about twenty feet from the road; that Henry Vance, the father of Doyle Vance, lived in his own home, which was about 200 yards north of the Doyle Vance house, and on the east side of the road; and that Farris Vance and his wife lived about 100 yards north of Henry Vance's house. The witness stated that on the night of December 10, 1951, the appellant and his father, Henry Funderburk, drove up in front of the Doyle Vance home in their automobile and stopped. Doyle Vance went out to the roadside and invited them in. Both men got out of the car, and Henry Funderburk began to curse and told Doyle Vance that he had heard that his daddy had taken out papers for him. Doyle stated that he knew nothing about the matter. Henry Funderburk then said, ''Anyone takes out papers for me is looking for trouble. * * * I could kill you.'' The conversation lasted about ten or fifteen minutes. Henry Funderburk said: ''I have as many guns and ammunition as anyone, and I have come to shoot it out and send every one of you to hell.'' Leonard Funderburk then said to his father, ''Come on and lets go down there.''

Mrs. Vance stated that the two men then got in their car and drove to Henry Vance's house, about 200 yards

away. They got out of their car and went up to the house. The moon was shining brightly, and the porch light at Henry Vance's house was burning. The two men stayed there a few minutes, and then went back to their car. They got in the car and drove to Farris Vance's house, turned around and came back. As they approached Henry Vance's house, they fired one shot, and then a big shot was fired that sounded like a gun shot; and just before the car got to Doyle Vance's house, other shots were fired. One bullet crashed through the window of Doyle Vance's house near the point where Mrs. Vance and her son, Dwight, were standing. Mrs. Vance stated on cross-examination that the first shooting was the only part of the shooting that she saw. Henry Vance was at Doyle Vance's house when the shooting started, and as the Funderburk car passed in front of Doyle Vance's house, Henry Vance and Doyle Vance fired back. Henry Vance had a shotgun and Doyle Vance an automatic rifle. The witness stated that the bullets that hit her house came from the car in the road. She admitted that she did not see any weapon in the hand of Leonard Funderburk, and she did not see Leonard Funderburk fire any of the shots.

Henry Vance testified that he was at Farris Vance's house when Leonard Funderburk and Henry Funderburk drove up and stopped in front of Doyle Vance's house. When he saw them stop in front of Doyle's house, he went over to his own house and got a shotgun, which was already loaded with slugs, and then crossed the road and went over to Doyle's house. He watched the Funderburks get in their car and drive down the road. He was then standing on the back porch of Doyle's house. The lights were burning in Farris Vance's house. He saw the Funderburk car turn around at Farris Vance's house and come back toward Doyle's house. When the car got about even with his own house, the occupants of the car started the shooting. When they got close to Doyle's house they began shooting again. After the

Funderburk car passed the south end of Doyle Vance's house, the witness stated that he fired three shots, and Doyle Vance fired two or three shots about the same time. Several shots had been fired from the car in the road before he fired, and other shots were fired after he and Doyle had fired. Doyle had a .22 rifle. The witness stated that he did not see any weapon in the hands of either Leonard Funderburk or Henry Funderburk, and did not know who did the shooting.

Hal Jolly, who was sheriff of Chickasaw County at the time of the shooting, testified that he received information concerning the shooting soon after the shooting occurred; that he drove to the Town of Houston and arrived there about 10:00 o'clock; that he got his two deputies and proceeded immediately to the neighborhood where the Vances lived in search of Henry and Leonard Funderburk. He found them at Buddy Taylor's house, a short distance south of Doyle Vance's house. He met Henry Funderburk on the porch. Henry had a sawed-off shotgun in his hand, which was loaded with buckshot. The sheriff arrested him and took the shotgun away from him. He also arrested Leonard Funderburk. He found a knife and a 25 automatic pistol in the Funderburk car. Both of the Funderburks were drinking. He searched Henry Funderburk and found a half pint of whiskey and a knife on him. He examined the automobile after he had arrested the Funderburks and found that it had a number of bullet holes in it; and he found a pistol and an empty whiskey bottle in the car.

The appellant offered no witnesses to testify in his own behalf and did not testify himself.

The case was submitted to the jury on the testimony of the State's witnesses and the instructions of the court; and the jury returned a verdict finding the appellant guilty as charged. The appellant was sentenced to the state penitentiary for a term of four years. From that judgment the appellant prosecutes this appeal.

The first point argued by the appellant as ground for reversal on this appeal is that the court erred in refusing to grant the appellant's application for a continuance until the next term of the court in order that the appellant might procure the attendance of Henry Funderburk as a witness to testify for him. The appellant contends that Henry Funderburk was the only witness by whom the facts set out in his motion for a continuance could be proved, and that the action of the court in overruling his motion for a continuance constituted reversible error.

■■■ But this Court has held in many cases that the matter of granting a continuance is largely discretionary with the trial court, and that a judgment will not be reversed because a continuance is refused, unless there has been an abuse of sound discretion by the trial court. Solomon v. State, 71 Miss. 567, 14 So. 461; Lipscomb v. State, 76 Miss. 223, 25 So. 158; Williams v. State, 92 Miss. 70, 45 So. 146; 15 Ann. Cas. 1026; Ellis v. State, 198 Miss. 804, 23 So. 2d 688; Parker v. State, 201 Miss. 579, 29 So. 2d 910; Bolin v. State, 209 Miss. 866, 48 So. 2d 581. ■■■ And we think that under the facts in this case there was no abuse of the court's discretion in its refusal to grant a continuance on account of the absence of the appellant's co-defendant, Henry Funderburk.

The appellant's claim for a continuance was not based upon the absence of a witness, who was unavoidably absent on account of illness or for other justifiable cause, or who was beyond the jurisdiction of the court temporarily but would probably be available to testify at the next term of the court. But the witness in this case was a fugitive from justice. He had forfeited his bail bond. His whereabouts were unknown. There was no reasonable certainty that the appellant would be able to procure his attendance at the next term of court; and if he were present he could not be compelled to testify.

"It is well settled that a refusal to grant a continuance will not be considered an abuse of discretion where the witness was beyond the jurisdiction or compulsory process of the court, or where his whereabouts was unknown, and there was no reasonable certainty of the party asking the continuance being able to procure the testimony of such witness by the next term, as by obtaining his attendance at the trial or by securing his deposition; * * * So, where the witness is a fugitive from justice a continuance should not be granted on the vague hypothesis that perhaps, at some indefinite time in the future, he may be secured. Also, a continuance is properly refused where the circumstances are such that the absent witness, if present, could not be compelled to testify. * * *." 22 C. J. S., page 769, Criminal Law, par. 491.

In the case of Samuels v. State, 153 Miss 381, 120 So. 920, and in the case of Hodgkin v. State, 172 Miss. 297, 160 So. 562, the Court held that the denial of a motion for a continuance on the ground of the absence of a witness did not constitute reversible error, where it was not shown with any degree of certainty that the presence of a witness could be had at the next term of court.

In the case of Carroll v. Commonwealth, 234 Ky. 441, 28 S. W. 2d 505, the Court held that a defendant was not entitled to a continuance on account of an absent witness who was a fugitive from justice and whose whereabouts were unknown, where there was no showing that the witness could be procured at a future trial. The Court in its opinion in that case said: "Independent, however, of that fact, the law seems to be, except in some exceptional cases to which this one does not belong, that neither a defendant in a criminal prosecution, nor a party to any civil litigation, is entitled to a continuance for an absent witness who is a fugitive from justice and whose whereabouts is unknown. Especially is that true in the absence of a showing of a reasonable probability

that either the attendance of the witness or his testimony may be procured at the future trial of the case."

In the case of Parker v. State, 179 Ark. 1064, 20 S. W. 2d 113, the Court held that a defendant had no right to demand the postponement of his trial until such time as he might be able to secure the attendance of a fugitive from justice to testify as a witness in his behalf. The Court said, "There was no showing that the attendance of this witness could ever be secured."

In the case of Brown v. State, 129 Tex. Cr. 394, 87 S. W. 2d 720, the Court held that the trial judge did not abuse his discretion in denying a motion for a continuance asked for in a murder prosecution on the ground of the absence of a witness, who was expected to testify that the deceased had attacked the defendant with brass knucks just before the fatal stabbing, where such witness was a fugitive from justice, and search had been made for him by the sheriff, who was not certain that the witness could be located by the next term of the court. In the case of Sanders v. State, 116 Tex. Cr. 172, 34 S. W. 2d 612, the Court held that an application for a continuance on account of an absent witness was properly overruled, where it was clearly inferable from the bill of exceptions presenting the matter that the witness was a fugitive from justice at the time the appellant's case was called for trial. The court said that the trial judge was not called upon to continue a case under such circumstances. See also Deckard v. State, 58 Tex. Cr. R 34, 124 S. W. 673; State v. Taylor, 167 La. 1113, 120 So. 875; State v. Dundas, 168 La. 95, 121 So. 586; State v. Chevallier, 169 La. 135, 124 So. 670.

██ The next point argued by the appellant's attorney is that the court erred in refusing to delay the trial so that the appellant might obtain a medical report concerning the condition of his mother, Mrs. Henry Funderburk, who had been subpoenaed as a witness to testify on behalf of the appellant. But there was no error in

the refusal of the court to grant a further postponement of the trial for the purpose of enabling the appellant to obtain such a medical report. If the appellant desired to obtain a medical report concerning his mother's physical condition, he had had ample time to procure such report before the case was called for trial on Wednesday of the second week of the term.

It is next contended on behalf of the appellant that the court erred in overruling the appellant's motion for a directed verdict at the conclusion of the State's evidence, and in refusing to grant the appellant's request for a peremptory instruction. But there was no error in the action of the court in overruling the appellant's motion for a directed verdict and in refusing to grant the peremptory instruction; and, in our opinion, the evidence was sufficient to justify the verdict of the jury.

The appellant next contends that the court erred in granting the State's instruction appearing on page 23 of the record, which authorized the jury to convict the appellant if the jury believed from the evidence beyond a reasonable doubt that the appellant either committed the assault, as charged, or was present and aided and abetted in the commission of the assault. The appellant contends that there was no proof to show that the appellant was directly engaged in the commission of the assault, or that he fired any of the shots at or toward the parties named in the indictment, and that insofar as the instruction authorized the jury to convict him of the assault, the instruction was based upon no evidence whatsoever.

But, according to the testimony of Mrs. Vance, the appellant was driving the car in which he and his father were riding at the time they stopped in front of Doyle Vance's house, and the appellant was present when Henry Funderburk made the threats, which were directed mainly against Henry Vance, that "anyone takes out papers for me is looking for trouble  *  *  *  I have

as many guns and ammunition as anyone, and I have come to shoot it out and send everyone of you to hell.'' And, according to Mrs. Vance's testimony, after those threats were made the appellant said to his father, ''Come on and lets go down there.'' The appellant and his father then drove down to Henry Vance's house, which was located about 200 yards north of Doyle Vance's house, on the opposite side of a branch bottom; and not finding Henry Vance at home, they drove to Farris Vance's house, turned around and drove back by Henry Vance's house and Doyle Vance's house, and the shots were fired as they passed the two houses. Under these circumstances the jury was warranted in believing that, when the appellant said to his father, ''Come on and let's go down there,'' the appellant meant that they should go down to Henry Vance's house, and that the appellant aided and abetted his father in the commission of the crime, whether he fired any of the shots or not. When the sheriff arrested the two men a few hours later at Buddy Taylor's house, Henry Funderburk had a sawed-off shotgun in his hand, and the sheriff found an automatic pistol in the car.

It was not necessary for the State to prove that the appellant actually fired any of the shots. In the case of McCoy v. State, 91 Miss. 257, 44 So. 814, the Court said: ''Each person present, consenting to the commission of the offense and doing any act which is an ingredient in the crime, or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense,'' citing Wharton on Homicide (3d Ed.), pp. 49 and 50. See also, Dean v. State, 85 Miss. 40, 37 So. 501; Thomas v. State, 205 Miss. 653, 39 So. 2d 272; Merrell v. State (Miss.), 39 So. 2d 306; Porter v. State (Miss.), 39 So. 2d 307.

The State's evidence connecting the appellant with the crime went much further than merely showing

that the appellant was in the automobile with his father at the time of the shooting; and we think that the appellant's criticism of the instruction, to the effect that, insofar as the instruction authorized the jury to convict the appellant of the assault, the instruction was based upon no evidence whatsoever, is untenable.

Finally, the appellant contends that the court erred in refusing to instruct the jury to disregard certain remarks made by the district attorney in his closing argument, which are set forth in a special bill of exceptions. We do not approve the statement made by the district attorney in his closing argument, to which the appellant interposed objection, and the court should have instructed the jury to disregard the statement. However, the statement complained of was not so prejudicial as to justify a reversal of the judgment of the lower court on that account; and indeed the appellant's attorneys concede that the action of the court in refusing to instruct the jury to disregard the remarks complained of would not justify a reversal by itself.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Arrington, JJ.,* concur.