POOLE *v.* STATE

No. 40204 November 5, 1956 90 So. 2d 212

*J. L. Davis, Jr.,* Jackson, for appellant.

*John H. Price, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Carl Franklin Poole, was indicted, tried and convicted at the July 1955 Term of the Circuit Court of Rankin County on a charge of burglary, and was sentenced to imprisonment in the state penitentiary for a term of two years. From that judgment he prosecutes this appeal.

The testimony of the State's witnesses shows that the building which was burglarized was a store building in the Town of Pelahatchie owned and occupied by Grayden Cauthen. The crime was committed during the early morning of October 2, 1953. Cauthen testified that he closed his store at 12:00 o'clock noon on Thursday, October 1, according to the custom among the merchants,

and drove to Mobile, Alabama, where he spent the night. He returned to Pelahatchie the next morning and went to the store about 8:30 o'clock. He found the front door of the store open; the padlock had been knocked off, and his iron safe and a lot of cigarettes were missing. Cauthen was notified two or three days later that the safe had been found by the Monroe County officers in the home of the appellant's mother in Monroe County. Cauthen went to Aberdeen with J. L. Barrow, Marshal of the Town of Pelahatchie, and identified the safe and brought it back to Pelahatchie. Cauthen testified that he had known the appellant about a year; that the appellant and his mother had lived in the Pelahatchie community most of that time; and that the appellant had helped him about the store a part of that time and had operated a rolling store for him for a period of several months. The appellant had not worked for him, however, during the last several weeks next preceding the date of the burglary. Cauthen stated that he had about $12,000 worth of bonds and money in the safe when it was stolen.

Terry Taylor, a colored man who lived about 200 yards from Cauthen's Store, testified that the appellant worked for Mr. Cauthen about two months; that the appellant came to his house about 4:00 o'clock a.m. on October 2, 1953, and told him that Mr. Cauthen had instructed him to get Taylor to help him load a box into a truck. That was before daylight. Taylor stated that he put his clothes on and went to the store with the appellant. When he got to the store, he saw a blue pickup truck backed up against the edge of the porch and what looked like a pasteboard box on the porch. The front door of the store was open. Taylor helped the appellant dump the box into the pickup truck. The box was very heavy. Taylor then went back to his house, and later in the morning Mr. Cauthen called him and told him somebody had broken into his store.

J. L. Barrow, the town marshal, testified that he was notified about 5:30 in the morning that Cauthen's Store

had been burglarized, and that he went to the store immediately. He found the store door open; the lock had been broken off, and it looked like something heavy had been rolled out of the store on to the porch. The marks on the floor started over in the corner where the safe had been, and extended out to the front of the store. Barrow stated that he found some little scraps of yellow paper on the floor. He put the pieces of paper in an envelope and carried them to the office and pieced them together, and found that they were pieces of a highway patrol ticket. The ticket was dated October 1, 1953, and was addressed to Carl F. Poole, who was summoned to appear before a justice of the peace of Oktibbeha County on October 2, 1953, to answer charges of reckless driving and driving without a driver's license. Barrow stated that he continued his investigation and found out that Poole and his mother had moved back to Monroe County. He then called the Sheriff of Monroe County and requested that Poole be picked up on the charge of burglary. He also contacted the State Highway Patrol and the Sheriff of Rankin County. Barrow was notified a few hours later that the safe had been found in Monroe County, and on the following Sunday he and Cauthen went to Monroe County and found the safe and cigarettes and "stuff taken by Poole" at the sheriff's office. Cauthen identified the safe and other articles as being articles that belonged to him, and Cauthen and Barrow brought them back to Pelahatchie. Barrow stated that sometime thereafter the local authorities were notified by the police department of the City of Los Angeles, California, that they had Poole in jail in Los Angeles.

O. B. McCandliss, deputy sheriff of Monroe County, testified that the Monroe County sheriff received information about the burglary in Rankin County on October 2, 1953. McCandliss was personally acquainted with the appellant, whose mother was living in Monroe County at that time. McCandliss stated that he obtained a war-

rant for the appellant's arrest and went to the home of the appellant's mother to make the arrest. He found that the appellant was not at his mother's house, but in making his search for the appellant he found the tobacco, cigarettes, snuff and B. C. headache powders in the house. He found the safe on the back porch. He carried the stolen property back to Aberdeen and stored it in the sheriff's office.

The appellant was not represented by an attorney, and at the conclusion of the State's testimony the trial judge stated to the appellant that he might make a statement to the jury, if he desired to do so, and that if he had any witnesses whom he wished to call to testify for him, or if he wished to testify himself, he might do so.

The appellant, testifying in his own behalf, stated that he was not guilty of the crime charged against him; that he did not break into Cauthen's store, and that he did not steal Cauthen's safe; that he had worked for Mr. Cauthen, and if he had wanted to steal from him, he could have done so while he was working for him and running the rolling store. He did not know whether the highway patrol ticket that had been introduced in evidence was his or not. He did not know how it got in the store. He stated that he was not around Pelahatchie when the store was burglarized, but he was in the City of Los Angeles looking for a job. On cross-examination, he stated that he had moved his mother to Monroe County before he left for Los Angeles on September 30, 1953. He was asked, "When did you come back from California?" His answer was, "I left Los Angeles April 1 of this year."

The appellant's attorney assigns two errors as ground for reversal of the judgment of the lower court: (1) That the court erred in refusing to grant the appellant a continuance after a proper motion had been made and cause therefore had been shown; and (2) that the court erred in forcing the appellant to go to trial over his protest and without the benefit of counsel.

The record in the case does not show that the appellant at any time asked for a continuance in order that he might have more time within which to employ counsel. Neither does the record show that the appellant at any time requested the court to appoint counsel to represent him. The judgment itself merely recites that the defendant came "in his own proper person, trying the case for himself, and announced ready for trial." But, in support of his assignment of errors, the appellant's attorney has filed as exhibits to his brief the affidavits of two attorneys, Frank F. Mize and David Williams. The affiadvit of Frank F. Mize is dated October 13, 1956, and in his affidavit the affiant states that he was present and in attendance in the Circuit Court of Rankin County at the July 1955 Term when the appellant's case came on for trial; that the appellant asked the affiant to represent him, but the affiant had other business to attend to and was not able to represent the appellant, and that the affiant advised the appellant to request a continuance in order that he might obtain counsel; that the appellant did make such request, and the court granted him one day in which to obtain counsel; that a similar request was made the following day, and the request was denied. The affidavit of David Williams is dated September 14, 1956, and in his affidavit the affiant states that he was present and in attendance in the Circuit Court of Rankin County on July 15, 1955, when the appellant's case was called for trial; that the appellant, not being represented by counsel, made an oral motion for a continuance so that he might obtain counsel to defend him; and that the request was denied, and the court proceeded with the trial.

Upon the basis of these affidavits, it is argued that the trial court, by its refusal to grant a continuance, deprived the appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution; and the appellant's attorney cites in support

of his contention Chandler v. Fretag (1954), 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4.

■■■ We think there is no merit in either of the points stated in the assignment of errors, or in the appellant's contention that the refusal of the trial judge to grant a continuance constituted a denial of due process of law, as guaranteed by the Fourteenth Amendment.

In the case of Chandler v. Fretag, supra, the Supreme Court had under review the record in a habeas corpus proceeding, whereby the petitioner sought relief from a sentence of life imprisonment in the state penitentiary as an habitual criminal. The petitioner had been indicted on March 10, 1949, for housebreaking and larceny, and had been released on bond while awaiting trial set for May 17, 1949. On that day he appeared in court intending to plead guilty to the indictment, since he had no defense to the charge. When his case was called for trial he was orally advised by the trial judge that he would also be tried as an habitual criminal because of three alleged prior felonies. He promptly asked for a continuance to enable him to obtain counsel on the habitual criminal charge. But his request was summarily denied; a jury was empaneled; and the case proceeded to trial. He was found guilty on the housebreaking and larceny charge and was sentenced to three years imprisonment on that charge. He was also found to be an habitual criminal, and was sentenced to life improsonment on that charge. Three years later, having served his sentence on the housebreaking and larceny charge, the petitioner applied for habeas corpus relief from the life sentence. The state courts denied relief. The Supreme Court granted certiorari and upon the hearing reversed the judgment of the lower court; and the Court in its opinion said, "By denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment."

It can be readily seen that the facts in the Chandler case were entirely unlike the facts in the case that we now have before us.

In the case that we have here the crime with which the appellant was charged had been committed twenty-one months before the case was called for trial. The appellant had been arrested in Los Angeles, California, and according to a statement contained in the appellant's brief, the appellant had employed counsel to make bond to get him out of jail. The appellant testified that he had returned to Mississippi about three months before the case was called for trial. The appellant had had ample notice of the charge made against him and ample opportunity to employ counsel to defend him, if he wished to employ counsel; and no constitutional rights of the appellant were infringed by the court's refusal to grant a continuance to enable the appellant to employ counsel.

In the case of Gallegos v. State of Nebraska, 342 U.S. 55, 72 S. Ct. 141, 96 L. Ed. 86, the Court said: ''The Federal Constitution does not command a state to furnish defendants counsel as a matter of course, as is required by the Sixth Amendment in federal prosecution. Lack of counsel at state noncapital trials denies federal constitutional protection only when the absence results in a denial to accused of the essentials of justice.''

There is nothing in the record that we have here to indicate that the absence of counsel resulted in a denial to the accused of the essentials of justice The appellant was about 35 years of age at the time of the trial. He appears to have been a man of at least average intelligence. He cross-examined the witnesses who testified against him, and from the questions asked it appears that he understood the purpose of cross-examination. He testified in his own behalf, and his testimony shows that he had a clear understanding of the case made out against him by the prosecution. At the conclusion of the evidence the trial judge granted the appellant two instruc-

tions, in which the jury was told that the indictment was no evidence of guilt on the part of the accused; that the burden of proof rested upon the State to prove the defendant guilty beyond every reasonable doubt and to a moral certainty; and that if the jury believed that the State had failed to prove the defendant guilty beyond every reasonable doubt and to a moral certainty, the jury should return a verdict in his favor. The proof of the appellant's guilt was clear and convincing, and there is no reason to believe that the presence of counsel to represent him would have produced a different result.

 The granting of a continuance or the refusal to grant a continuance in a case of this kind is largely within the discretion of the trial judge. Williams v. State, 92 Miss. 70, 45 So. 146, 15 Ann. Cas. 1026; Bucklew v. State, 218 Miss. 820, 67 So. 2d 881. A trial judge will not be reversed for refusing to grant a continuance unless it appears that he has clearly abused his discretion in refusing to grant such continuance. Funderburk v. State, 219 Miss. 596, 69 So. 2d 496, 42 A.L.R. 2d 1221, and cases cited; Lee v. State, 220 Miss. 298, 70 So. 2d 609.

 It is well-settled by our own decisions that in passing upon assignments of error based upon the alleged refusal of the trial judge to grant a continuance, this Court must look to the record and cannot consider affidavits obtained after adjournment of court averring facts which have not been made matters of record. See Whit v. State, 85 Miss. 208; Fairley v. State, 152 Miss. 656, 120 So. 747; Craig v. State, 208 Miss. 528, 44 So. 2d 860; Thompson v. State, 220 Miss. 200, 70 So. 2d 341. In this case, however, we have considered the constitutional question argued in the appellant's brief just as we would have done if the record had shown a motion for a continuance; and assuming that such motion was made, we find no facts in the record that would warrant a holding that the trial judge abused his discretion in refusing to grant the continuance.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.